UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re: Christopher Postiglione
aka Chris A. Postiglione
aka Christopher A. Postiglione,

                                                               Case No. 8-16-75377-reg
                                                               Chapter 7

                                    Debtor.
----------------------------------------------------------------x
Gardiners Bay Landscape & Design, Inc.,

                                    Plaintiff,
                                                            Adv. Pro. No. 8-17-08012-reg
      -against-

Christopher Postiglione,
                                   Defendant.
----------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

Before the Court is the Plaintiff's motion for summary judgment [ECF No. 14][1], seeking to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5). The Plaintiff, Gardiners Bay Landscape & Design, Inc. ("Plaintiff" or "Gardiners Bay"), argues that the discharge should be denied based on allegations that: the Debtor intentionally transferred and/or concealed assets of the Debtor's wholly owned landscaping business, Greenboy Landscape, Inc. ("Greenboy") with the intent to hinder, delay, or defraud creditors (§ 727(a)(2)); the Debtor concealed or failed to keep proper records of his personal affairs and the corporate affairs of Greenboy (§ 727(a)(3)); the Debtor knowingly and fraudulently made false oaths in his petition and schedules (§ 727(a)(4)); and the Debtor failed to explain the loss of Greenboy assets (§ 727(a)(5)).

---

[1]     Unless otherwise noted, ECF references are to the docket in Adversary Proceeding No. 17-8012.

Many of the Plaintiff's allegations are predicated on the assumption that the Debtor and his wholly owned entity, Greenboy, should as a matter of law be deemed one and the same. Therefore the Debtor's failures to maintain records and explain the disposition of the assets of Greenboy form the basis of the summary judgment motion. However, there has been no finding by this Court or any other court that Greenboy is the Debtor's alter ego, and the Court will not make such a finding at the summary judgment stage. Therefore, for purposes of this motion the Debtor and Greenboy shall be viewed as separate and the assets of Greenboy will not be deemed the assets of the Debtor. On this basis, the Court is unable to find as a matter of law that the Debtor's alleged failures as they relate to Greenboy constitute a basis to deny the Debtor's discharge.

For these reasons and for the reasons stated herein, the Court finds that there are genuine disputes as to material facts which preclude entry of summary judgment in favor of the Plaintiff.

***Background and Material Facts***

On March 29, 2015, Greenboy Landscape Inc. entered into an Asset Purchase Agreement and Bill of Sale (the "<u>Purchase Agreement</u>") with the Plaintiff Gardiners Bay Landscape & Design, Inc. Greenboy agreed to purchase Plaintiff's commercial and residential landscaping and landscape design business for $90,000.00, to be paid in monthly installments concluding in August of 2016. The Debtor signed the Purchase Agreement as Greenboy's owner. The Debtor did not sign the Purchase Agreement on his own behalf. Greenboy acquired certain equipment under the Purchase Agreement, including but not limited to: a 36" Wright mower; a 62" Wright mower; a 48" Scag Advantage mower; and a 1997 Dodge Ram Pickup.

After making one initial payment of $3,500, Greenboy defaulted.

On August 15, 2015, the Plaintiff commenced an action against Greenboy *and the Debtor individually* in the Supreme Court of the State of New York Suffolk County ("State Court"), alleging breach of contract, fraudulent inducement, unjust enrichment, conversion, and aiding and abetting conversion. *Gardiners Bay Landscape & Design, Inc. v. Greenboy Landscape, Inc. and Christopher Postiglione a/k/a Chris Postiglione* (Index No. 608856/2015).

Around the same time, the Debtor created a LetGo.com ("LetGo")[2] account on which he offered certain items for sale, including, but not limited to: (a) a 36" Wright mower, (b) a 4-yard front end payloader, and (c) a 48" Scag Advantage mower. [ECF No. 16, Exhibit K]. Also listed were a couple of bicycles, a farm gate, a blue truck cap, and a marine grade search light. Screenshots offered by the Plaintiff show that these items were listed as early as September 2016, and a screenshot from December 9, 2016 reflects that the following items were "sold": marine grade search light, blue truck cap, 36" Wright mower, and the 4-yard front end payloader (which was listed for $4,500). [ECF No. 1, Exhibit C].

On November 17, 2016, the Debtor filed the instant chapter 7 petition, which stayed the State Court action. The Debtor listed Gardiners Bay as a general unsecured creditor with a contingent, unliquidated, and disputed claim in the amount of $90,000 [Case No. 16-75377, ECF No. 1, Schedule E/F]. Although this is a "no asset" case and no claims bar date was set, the Plaintiff filed a Proof of Claim in the amount of $103,159.73, plus interest and attorney's fees. The only other scheduled liabilities are $20,000 in priority tax debt, plus *de minimis* ($1,700) in general unsecured debt.

---

[2] LetGo is an online application for the sale or disposal of goods by its users. [ECF No. 16, Exhibit H at 24-25].

The Debtor represented in his petition that his debts were primarily "consumer debts." [Case No. 16-75377, ECF No. 1, Official Form 101]. In response to Question 37 of Schedule A/B, the Debtor swore that he did not have any legal or equitable interest in any business-related property. In response to Question 17 on Schedule A/B, the Debtor disclosed four bank accounts: (1) Checking account; joint with wife, Capital One Bank, (2) Checking account, TFCU, (3) Savings account, TFCU, and (4) Checking account, TFCU. Account numbers were not provided. In response to Question 20 of the Statement of Financial Affairs, the Debtor swore that within the one year before he filed bankruptcy there were no checking savings, money market or other financial accounts held in his name, or for his benefit, which were closed, sold, moved or transferred.

The exhibits presented in connection with the summary judgment motion show that the Debtor maintained at least three personal bank accounts: (1) Teachers Federal Credit Union ("<u>TFCU</u>") checking account in the Debtor's name (account number ending in 9715) ("<u>TFCU Personal Checking Account</u>"), (2) TFCU savings account in the Debtor's name (account number ending in 1010) ("<u>TFCU Personal Savings Account</u>"), and (3) a joint account held with the Debtor's wife, Emily Postiglione, at Capital One Bank Account (account number ending in 8768) ("<u>Capital One Joint Account</u>"). The Debtor also maintained at least two business bank accounts: (a) TFCU (account ending in 7256) ("<u>TFCU Corporate Account</u>"), and (b) a small business Capital One Bank Account in the Debtor's name d/b/a Green Boy Landscape ("<u>Small Business Capital One Account</u>") (account ending in 9362), which was charged off in September 2016. [ECF No. 16, Exhibits L-M, ECF No. 17, Exhibits N-P].

On February 16, 2017, the Plaintiff commenced the instant adversary proceeding seeking to deny the Debtor's discharge. On May 18, 2017 the Debtor answered the complaint.

On December 5, 2017, the Plaintiff filed the present motion for summary judgment together with a declaration, exhibits, and memorandum of law in support of summary judgment. The Debtor replied to the motion on February 9, 2018 with a counterstatement of material facts and later filed a reply memorandum of law in support of denying summary judgment. A hearing was scheduled for February 26, 2018 at which time this matter was taken under submission.

## DISCUSSION

*Standing*

The Debtor's personal liability under the Purchase Agreement was made an issue in this case.[3] Although the Court initially questioned whether the Plaintiff had standing as a creditor to assert these § 727 claims if the Debtor had no personal liability under the Purchase Agreement, that issue is a red herring. The Plaintiff's pre-petition non-contract claims against the Debtor individually suffice to establish the Plaintiff's status as creditor in this case even though those claims are disputed by the Debtor. *See* 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or the United States trustee may object to the granting of a discharge ..."). *See also* 11 U.S.C. §§ 101(10) ("[a] creditor is an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."), and 101(5) (claim means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ..").

---

[3]    The Debtor signed the Purchase Agreement on behalf of Greenboy as its owner. Although there was a signature line for the Debtor to sign individually, he did not sign there. Nor was there any language in the Purchase Agreement reflecting a personal guarantee. Thus the Debtor denies personal liability under the Purchase Agreement. Despite this, the Plaintiff claims the Debtor has liability under the Purchase Agreement.

*Summary Judgment and § 727 Standards*

In order to grant summary judgment, "there [must be] no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  Once the movant shows "…the absence of a genuine issue of material fact…", then, the burden is on the non-moving party to set forth specific facts raising a genuine issue of fact for trial. *United States ex. rel. Romano v. New York Presbyterian*, 426 F. Supp. 2d 174, 177 (S.D.N.Y. 2006); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The plaintiff bears the burden of establishing each of the elements of § 727 by a preponderance of the evidence." *See Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005.  It is well-settled that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor.  *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996).

*Alter ego*

Determining the legal relationship between the Debtor and Greenboy is a critical threshold issue in this case.  Can the Court find as a matter of law that Greenboy is the alter ego of the Debtor?  In order to establish a claim for alter ego liability, the plaintiff is generally required to prove, "complete domination of the corporation in respect to the transaction attacked and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." *Baby Phat Holding Co., LLC v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (N.Y. App. Div. 2014) (citing *Matter of Morris v. New York State Dept. of Taxation & Fin.,* 82 N.Y.2d 135, 141 [1993]).

An alter ego finding establishes that at the time of the relevant transaction, the controlling principal and the corporation were in actuality one and the same with the effect that the assets

and liabilities of the corporation are assets and liabilities of the principal, and vice versa. *See Agai et al. v. Mihalatos (In re Mihalatos)*, 527 B.R. 55, 64 (Bankr. E.D.N.Y. 2015). In this case, as previously stated, the Debtor's personal liability under the Purchase Agreement is not necessary to establish standing. Nor is it important in the context of the distribution of assets because this is a no asset case and no distributions will be made.[4] Nor is personal liability a necessary element of these § 727 claims. However, an alter ego finding is significant in this case because if such a finding were made, the assets of Greenboy would be deemed to be assets of the Debtor. *Id*. Within the context of this § 727 analysis, this would mean that the Debtor's disclosure and accountability failures as to Greenboy would simultaneously be failures as to the Debtor and this could form the basis to deny the Debtor's discharge. *See Pisculli v. T.S. Haulers, Inc. et al. (In re Pisculli)*, 426 B.R. 52, 60 (E.D.N.Y. 2010) (citing *In re Bonham,* 224 B.R. 114, 116 (Bankr .D. Alaska 1998) (holding that courts have the authority to deny a discharge to an individual debtor under § 727(a)(2)(A) based upon transfers of property of corporations found to be the debtor's alter ego)), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).

In support of the alter ego allegation, the Plaintiff asserts that the Debtor continued to use Greenboy bank account(s) for his own personal use after Greenboy ceased doing business, and he transferred personal funds into Greenboy account(s) with the intent to shield personal monies from his creditors and from the chapter 7 trustee. The Plaintiff also argues that the Debtor commingled the proceeds of the sale of Greenboy assets with his personal funds, and vice versa. [ECF No. 16, Exhibit H at 124-125].

---

[4] A finding on the Debtor's liability under the Purchase Agreement or on the State Court claims would only be relevant in the event this Court denies the Debtor's discharge. In such case, the Plaintiff will be free to pursue its claims against the Debtor unencumbered by the bankruptcy discharge. This Court will not be the arbiter of the Debtor's ultimate liability.

The Court is not prepared to make this alter ego finding and disregard the corporate separateness of Greenboy at the summary judgment stage. Alter ego requires a finding that the Debtor's domination of the corporation was used to commit a fraud or wrong against the Plaintiff. The Debtor disputes any wrongdoing or intent to defraud. The Court is of the view that absent exceptional circumstances any finding of fraud or wrongdoing in this context should be made after trial. This is so especially in the § 727 context where denial of discharge is such a drastic remedy and any analysis should be strictly construed in favor of the Debtor.

*11 U.S.C. § 727(a)(2)*

A debtor's discharge may be denied under § 727(a)(2) "if the debtor (1) with intent to hinder, delay, or defraud a creditor (2) transfers, removes, destroys, mutilates, or conceals, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) property of the debtor (4) within one year of the petition date." *Doubet, LLC v. Palermo (In re Palermo)*, 370 B.R. 599, 612 (Bankr. S.D.N.Y. 2007) (citation omitted). "A key component of [§] 727(a)(2) is that the property at issue was the property of the debtor, so that the transfer diminished the debtor's bankruptcy estate." *Web Holdings, LLC, v. Cedillo (In re Cedillo)*, 573 B.R. 451, 464-65 (Bankr. E.D.N.Y. 2017). Furthermore, the plaintiff must establish an actual intent to hinder, delay or defraud. *Glaser v. Glaser (In re Glaser)*, 49 B.R. 1015, 1019 (Bankr. S.D.N.Y. 1985).

In the instant action, the Plaintiff asserts that the Debtor transferred assets or permitted assets to be transferred by creating the LetGo account in his own name and posting assets of Greenboy for sale. The Debtor does not dispute that he created the LetGo account for the purposes of selling assets and that assets were in fact sold.

The parties disagree as to two key elements of § 727(a)(2), *i.e.,* whether (1) the property transferred was property of the Debtor, and (2) whether the transfer occurred with actual intent to hinder, delay, or defraud creditors. The Plaintiff argues that the Debtor transferred assets in an attempt to hinder Plaintiff's ability to obtain a recovery on its claim. The Debtor asserts that the property alleged to have been transferred was Greenboy property and his intent was a good faith attempt to wind up the affairs of Greenboy in accordance with his duties as sole shareholder. And, he argues, the property sold was either negligible or encumbered by liens, rendering it valueless thus negating any intent to hinder, delay or defraud creditors.

The Court finds that the existence of these material disputes preclude summary judgment. Therefore, summary judgment is denied as to § 727(a)(2).

## 11 U.S.C. § 727(a)(3)

Pursuant to § 727(a)(3), the court shall deny the debtor's discharge if the debtor "… concealed, destroyed, mutilated, falsified, or failed to keep or preserve information… from which the debtor's financial condition or business transactions might be ascertained…" 11 U.S.C. § 727(a)(3). The "policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *State Bank of India et al. v. Sethi (In re Sethi)*, 250 B.R. 831, 837 (Bankr. E.D.N.Y. 2000).

The Plaintiff argues that as the sole shareholder of Greenboy, it was the Debtor's obligation to maintain corporate books and records. The Debtor admits that he kept no books or records for Greenboy other than the bank account statements, tax returns for the relevant time period, customer lists, and a list of Greenboy equipment and how it was disposed of – all of

which information was turned over to the Plaintiff. The Debtor claims that the records turned over to Plaintiff were adequate to determine the value of his financial interest in Greenboy.

As there has been no alter ego finding at this stage, the focus of the analysis is on whether the information preserved by the Debtor is sufficient to ascertain his financial condition or business transactions, not Greenboy's *per se*. The Court finds that there is a genuine dispute of material fact as to whether the information alleged to be missing is necessary to ascertain the Debtor's financial condition or business transactions. As a result, summary judgment is denied under § 727(a)(3).

## *11 U.S.C. § 727(a)(4)*

To deny the discharge under § 727(a)(4) the Plaintiff must prove that, "(1) the debtor made a statement under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy case; (4) the debtor knew the statement was false; and (5) the debtor made the statement with fraudulent intent." *Agai et al. v. Antoniou (In re Antoniou)*, 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014).

It is undisputed that the Debtor made a statement under oath when he signed his bankruptcy petition. *See Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991). As to the second element, the Plaintiff contends that the Debtor made affirmative statements that were false and failed to include information that should have been included in the bankruptcy petition. Specifically, the Plaintiff argues that the Debtor represented that his debts were primarily "consumer debts" when in fact his debts relate mainly to his business. Next, the Plaintiff alleges that the Debtor falsely represented that he did not use an Employer Identification or any business name within the past 8 years. [Case No. 16-75377, ECF

No. 1, Official Form 101]. Finally, the Plaintiff alleges that the Debtor failed to disclose his legal or equitable interest in any business property, claimed to have not transferred any interest in same, and falsely asserted that corporate funds were never held in his personal accounts. [Case No. 16-75377, ECF No. 1, Schedule A/B]. The Plaintiff contends that the Debtor knew his statements were false, the statements were materially related to the bankruptcy, and that he made the statements with fraudulent intent.

In response, the Debtor argues that listing his debts as "primarily consumer debts" was not false because although his scheduled debt did relate primarily to business obligations, he disputes any personal liability. In addition, he notes that fraudulent intent is negated by his act of listing the Plaintiff's disputed claim in the bankruptcy petition. Further, while the Debtor admits that his statements were incorrect with regard to the use of a business name or Employer Identification Number (EIN) in the past 8 years, he asserts that the Plaintiff has failed to prove materiality or fraudulent intent as his interest in Greenboy was disclosed elsewhere in the bankruptcy petition. Finally, the Debtor argues that he was not required to include Greenboy bank accounts and property in his petition because he did not hold a personal interest Greenboy's assets.

Clearly, the Debtor made false statements in his petition. The question here is whether the false statements were made by the Debtor with fraudulent intent. The Court will not decide issues of fraudulent intent on summary judgment. *See In re Adler*, 395 B.R. 827, 843-44 (E.D.N.Y. 2008) ("Section 727(a)(4) disputes regarding intent are generally decided after a trial/evidentiary hearing resolving such factual issues."). The Court finds that the Debtor has raised a triable issue of fact on the element of fraudulent intent sufficient to warrant denial of summary judgment under § 727(a)(4).

*11 U.S.C. § 727(a)(5)*

Pursuant to § 727(a)(5), the Court shall grant the debtor a discharge unless the "debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).  First, the plaintiff must establish that (1) the debtor at one time possessed or claimed to control substantial and identifiable assets; (2) that those assets have disappeared, their disposition or placement is unknown; and (3) no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by the debtor. *See, e.g. Adams v. Inzero (In re Inzero)*, 426 B.R. 428, 432 (Bank. D. Conn. 2009) (citing *In re Cacioli*, 463 F.3d at 238)); *Jiminez v. Rodriguez (In re Rodriguez)*, No. 05–19599, 2008 WL 3200215, at *2–3 (Bankr. S.D.N.Y. 2008) (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.08 (15th ed. rev.2008)).  Once the plaintiff has satisfied this burden the "debtor must explain satisfactorily the losses or deficiencies." *Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681, 689 (Bankr. E.D. Pa. 2001).

First, the Plaintiff contends that Debtor has failed to explain satisfactorily a loss of assets due to numerous transfers from the Debtor's personal bank account(s) to Greenboy bank account(s), and the Debtor's admission that he used Greenboy accounts to pay personal obligations.  Second, the Plaintiff claims that numerous assets were scrapped or sold within one year prior to filing the bankruptcy petition.  The Debtor contends that either (a) these assets were Greenboy's property, not his, or (b) even if they were his property, he provided plausible explanations for the disposition of these assets.  The Debtor claims that only one piece of his equipment was sold on LetGo, and that all other items claimed to be dissipated were either sold for scrap by Greenboy, left with repairmen, or remain in the Debtor's possession with little to no value.

The Court finds that there is a genuine dispute as to material facts which preclude summary judgment under § 727(a)(5). The disposition of Greenboy assets should not form the basis for relief under this section unless and until Greenboy is found to be the alter ego of the Debtor. Summary judgment is therefore denied under § 727(a)(5).

## CONCLUSION

For all the foregoing reasons, the Plaintiff's motion for summary judgment is denied pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) and (a)(5). Despite the Court's holding that the Debtor's discharge should not be denied as a matter of law, the Court has serious concerns about the Debtor's conduct in connection with this case. The sale of assets by the Debtor in the months preceding and during the pendency of the case is troubling, as is the Debtor's use of business bank accounts for personal finances.[5]

---

[5] The Debtor clearly used the Small Business Capital One Account for personal use within the one year prior to bankruptcy and failed to disclose the account. [ECF No. 17, Exhibit P]. In addition, mobile deposits into the Small Business Capital One Account were made from unknown sources, and transfers into the Small Business Capital One Account were made from the Capital One Joint Account, and, less frequently, transfers were made from bank accounts ending in numbers 2271 and 4476, which bank accounts have yet to be identified. In addition, account statements for the TFCU Corporate Account from April 2015 to August 2017 show a *de minimis* account balance and no activity, except for a $2,600 deposit in September 2016 and eight separate withdrawals against that deposit over ten days depleting the account, including transfers into the Debtor's TFCU Checking Account. [ECF No. 16, Exhibit H at 112-113]. The Debtor's apparent failure to maintain any distinction between his personal and business bank accounts raises serious concerns.

So Ordered.



**Dated: Central Islip, New York**
**August 29, 2018**

**Robert E. Grossman**
**United States Bankruptcy Judge**