UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re: Christopher Postiglione
aka Chris A. Postiglione
aka Christopher A. Postiglione,

                                               Case No. 8-16-75377-reg
                                               Chapter 7

                           Debtor.
-------------------------------------------------------------------x
Gardiners Bay Landscape & Design, Inc.,

                           Plaintiff,

                                               Adv. Pro. No. 8-17-08012-reg

              -against-

Christopher Postiglione,

                           Defendant.
-------------------------------------------------------------------x

## DECISION AFTER TRIAL

       This matter is before the Court pursuant to an adversary proceeding commenced by

Gardiners Bay Landscape & Design, Inc. (the "Plaintiff" or "Gardiners Bay") against

Christopher Postiglione (the "Debtor" or "Postiglione") to deny the Debtor's discharge pursuant

to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) and (a)(5).[1] The Plaintiff is a creditor in this case by

virtue of the Debtor's default of an asset purchase agreement pursuant to which the Debtor's

wholly-owned corporation, Greenboy Landscape, Inc. ("Greenboy"), acquired the assets of the

Plaintiff's landscaping business. The Plaintiff argues that the discharge should be denied based

on allegations that the Debtor: transferred and/or concealed Greenboy assets with the intent to

hinder, delay, or defraud creditors (§ 727(a)(2)); concealed or failed to keep proper records of his

personal affairs and the affairs of Greenboy (§ 727(a)(3)); knowingly and fraudulently made

---

[1]     All statutory citations are to title 11, United States Code, unless otherwise indicated.

false oaths in his petition and schedules (§ 727(a)(4)); and failed to explain the loss of Greenboy assets (§ 727(a)(5)).

The Plaintiff's causes of action are predicated in large part on the Court making a finding that Greenboy was at all relevant times the alter ego of the Debtor. Establishing that Greenboy is in fact the alter ego of the Debtor is critical to the Plaintiff's success in this proceeding. An alter ego finding establishes that at the time of the relevant transaction, the controlling principal and the corporation were in actuality one and the same with the effect that the assets and liabilities of the corporation are assets and liabilities of the principal, and vice versa. *See Agai et al. v. Mihalatos (In re Mihalatos)*, 527 B.R. 55, 64 (Bankr. E.D.N.Y. 2015). If Greenboy is found to be the Debtor's alter ego then the separate corporate existence of Greenboy disappears and the assets and liabilities of Greenboy become the assets and liabilities of the Debtor as if the corporate form never existed. In a prior written opinion denying Plaintiff's motion for summary judgment, the Court found that there were genuine issues of material fact which precluded an alter ego finding as a matter of law. [ECF No. 34] [2]

On January 29, 2019, the Court held a trial on the merits. After considering the evidence and testimony admitted at trial, and assessing the credibility of the witnesses, the Court finds that Greenboy was at all relevant times the Debtor's alter ego. In this case, the Debtor, the sole owner and operator of Greenboy, maintained little or no distinction between his own property and the property of Greenboy. Pre-petition at a time when the Debtor and Greenboy owed the Plaintiff nearly $90,000 and after a state court lawsuit alleging fraud was commenced, the Debtor caused his wages to be deposited into his wife's bank account and then he transferred those funds to a Greenboy account from which he paid personal expenses. Neither of these bank accounts were

---

[2]    Unless otherwise noted, ECF references are to the docket in Adversary Proceeding No. 17-08012.

disclosed in this bankruptcy proceeding. It is clear from these facts that not only did the Debtor

fail to maintain any distinctions between himself and Greenboy, but that the Debtor's conduct of

his affairs was intended to put his assets beyond the reach of his creditors which is sufficient to

support the wrongdoing necessary for an alter ego finding. Thus, the Court finds that Greenboy

was at all relevant times the Debtor's alter ego. Based on this alter ego finding, Greenboy's

assets were at all relevant times assets of the Debtor for purposes of this § 727 analysis.

As to the merits of the complaint, the Court finds that the Debtor's discharge should be

denied pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5).[3] While objections to discharge

are to be strictly construed against the party seeking to deny the discharge as has been stated

many times the fresh start promised by the Bankruptcy Code is reserved for the honest but

unfortunate debtor. A fundamental bedrock of the bankruptcy process is that unless a debtor is

transparent and forthright during the entirety of the bankruptcy proceeding, the debtor is not

entitled to receive a discharge. Here, as more fully explained, the Debtor failed to disclose assets

of Greenboy in his petition; he transferred and/or concealed assets within the one year prior to

bankruptcy; and failed to explain the loss of assets. The record is clear that this Debtor has been

neither transparent nor forthright and is therefore not entitled to a discharge.

### *Background and Material Facts*

The Debtor is the sole owner of Greenboy, a corporation formed under the laws of New

York State. *See* Pltf. Tr. Ex. 1. Greenboy operated a landscaping business prior to 2015. On

March 29, 2015, Greenboy entered into an Asset Purchase Agreement and Bill of Sale (the

"Purchase Agreement") with the Plaintiff. Greenboy agreed to purchase the Plaintiff's

commercial and residential landscaping and landscape design business for $90,000.00 with

---

[3]      For reasons explained later in this Decision, the Court will deny the Plaintiff's claim for relief
pursuant to § 727(a)(3).

$6,000 to be paid at closing and the remainder to be paid in monthly installments concluding in August of 2016. *See* Pltf. Tr. Ex. 2. The Debtor signed the Purchase Agreement on behalf of Greenboy as well as signing as personal guarantor for Greenboy.[4] *See id.* In addition to acquiring the Plaintiff's business and customer list Greenboy also acquired equipment including but not limited to: a 36" Wright mower; a 62" Wright mower; a Scag Advantage mower; and a 1997 Dodge Ram Pickup; along with miscellaneous landscaping tools and equipment. *See id.*

Greenboy operated the Plaintiff's landscaping business for about three months, until June or July 2015, and then ceased operations. Greenboy paid only $3,000 of the $6,000 down payment and thereafter defaulted on payments under the Purchase Agreement. Trial Tr. 81-82.

On August 15, 2015, the Plaintiff commenced an action against Greenboy and the Debtor individually in the Supreme Court of the State of New York Suffolk County alleging breach of contract, fraudulent inducement, unjust enrichment, conversion, and aiding and abetting conversion. The State Court action was titled "*Gardiners Bay Landscape & Design, Inc. v. Greenboy Landscape, Inc. and Christopher Postiglione a/k/a Chris Postiglione*" at Index No. 608856/2015 ("State Court action").

While the State Court action was pending, the Debtor maintained a LetGo.com ("LetGo")[5] account on which he offered certain items for sale, including, but not limited to: (a) a 36" Wright mower, (b) a 4-yard front end payloader, and (c) a 48" Scag Advantage mower. *See* Pltf. Tr. Ex. 7. Also listed were a couple of bicycles, a farm gate, a blue truck cap, and a marine grade search light. Screenshots offered into evidence by the Plaintiff show that these items were listed as early as September 2016, and a screenshot from December 9, 2016 reflects that the

---

[4]    Although the Debtor signed the Purchase Agreement "as Guarantor for Greenboy Landscape, Inc.", the Purchase Agreement contains no guarantee language.

[5]    LetGo is an online application for the sale or disposal of goods by its users.

following items were "sold": marine grade search light, blue truck cap, 36" Wright mower, and the 4-yard front end payloader (which was listed for $4,500). *See id*. Plaintiff's principal testified that he observed a Facebook page associated with the Debtor where certain go-cart equipment was being offered for sale. Trial Tr. 52-53. Plaintiff's principal also testified that he observed a Greenboy Facebook page which offered similar items for sale. Trial Tr. 54. When asked about the different items being offered for sale the Debtor testified he did not own any of them. Trial Tr. 90-93. The Debtor testified that the go-cart items (Trial Tr. 92) and the pick-up truck were his father's (Trial Tr. 93), the fence and bike were both his wife's (Trial Tr. 93-94), the marine grade search light and the payloader belonged to the Debtor's father-in-law (Trial Tr. 94), and the 36" Wright mower was his mother's (Trial Tr. 94). The Debtor disclaimed ownership of anything that was listed for sale or sold on his LetGo or Facebook accounts.

On November 17, 2016, the Debtor filed the instant chapter 7 petition, which stayed the State Court action. The Debtor listed the Plaintiff as a general unsecured creditor with a contingent, unliquidated, and disputed claim in the amount of $90,000 [Case No. 16-75377, ECF No. 1, Schedule E/F]. The Plaintiff filed a Proof of Claim in the amount of $103,159.73, plus interest and attorney's fees. The only other scheduled liabilities are $20,000 in priority tax debt, and de minimis ($1,700) general unsecured debt.

The Debtor represented in his petition that his debts were primarily "consumer debts." [Case No. 16-75377, ECF No. 1, Official Form 101]. In response to Question 37 of Schedule A/B, the Debtor swore that he did not have any legal or equitable interest in any business-related property. In response to Question 17 on Schedule A/B, the Debtor disclosed four bank accounts: (1) Capital One Bank joint checking account with the Debtor's wife ("Capital One Joint Account"); (2) Teachers Federal Credit Union Checking Account ("TFCU Checking #1"); (3)

Teachers Federal Credit Union Savings Account ("TFCU Savings"); and (4) Teachers Federal Credit Union Checking Account ("TFCU Checking #2"). [Case No. 16-75377, ECF No. 1, Schedule A/B]. In response to Question 20 of the Statement of Financial Affairs, the Debtor swore that within the one year before he filed bankruptcy there were no checking savings, money market or other financial accounts held in his name, or for his benefit, which were closed, sold, moved or transferred.

The Debtor maintained at least one business bank account for Greenboy which was not disclosed in his petition and schedules: a small business Capital One Bank Account in the Debtor's name d/b/a Green Boy Landscape ("Small Business Capital One Account") (account ending in x9362). Pltf. Tr. Ex. 8.

The Debtor did not schedule any ownership interest in real property, as he made very clear at trial that the marital residence is in his wife's name. Trial Tr. 67-68, 93-94, 101-102. Schedule I reveals that the Debtor's wife is a homemaker with no outside income.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

On February 2, 2017, the Plaintiff filed the instant complaint objecting to the Debtor's discharge under 11 U.S.C. § 727. [ECF No. 1]. The Plaintiff moved for summary judgment which the Debtor opposed. [ECF No. 13 and ECF No. 22]. The Court issued a Memorandum Decision denying summary judgment on the basis that there were genuine disputes as to material

facts that precluded a finding on alter ego, a major premise of the Plaintiff's allegations, as a matter of law. [ECF No. 34].

A trial was held on January 29, 2019. The Plaintiff's two principals testified at trial as did the Debtor. The Plaintiff's Exhibits 1 through 4 and 6 through 8 were admitted at trial.[6] Exhibits 6 and 7, which are lists and photocopies of the items listed on the Debtor's Facebook and LetGo accounts, were admitted for the limited purpose of showing that certain items were listed on the Debtor's accounts. They were not admitted as proof that the Debtor in fact owned these items.

## DISCUSSION

### Alter Ego

For a party to succeed in establishing allegations of alter ego veil piercing, New York law generally requires a plaintiff to prove, (1) "'complete domination of the corporation in respect to the transaction attacked'" and (2) "'that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury.'" *See Baby Phat Holding Co., LLC v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (N.Y. App. Div. 2014) (*citing Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y. 2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 [1993]).

The Second Circuit has enumerated a non-exhaustive list of factors relevant to determining whether a corporation has been "dominated" by its owner:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken

---

[6]     Exhibit 2 is a copy of the Purchase Agreement which was unsigned by the Debtor as personal guarantor for Greenboy. However, at trial the Plaintiff produced a previously unavailable copy of the document which was in fact signed by the Debtor as guarantor. This document was substituted in as Plaintiff's Exhibit 2, and Defendant's Exhibit 1.

out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalqcqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131, 139 (2d Cir. 1991); *see also Ng v. Adler*, 518 B.R. 228, 233 (E.D.N.Y. 2014) (*citing Mars Elecs. of N.Y., Inc.*, 28 F.Supp.2d at 97-98). No one factor is determinative, and courts must consider a broad-based inquiry into the totality of the facts to determine whether the party seeking to hold the defendant liable under one of the veil piercing theories has established the domination prong of the test. *See Adler*, 518 B.R. at 233; *see also Pergament v. Precision Sounds DJ's, Inc. et al (In re Oko)*, 395 B.R. 559, 564-65 (Bankr. E.D.N.Y. 2008) (finding defendant abused corporate form based on the totality of the circumstances).

Under the second prong of the alter ego analysis, the party seeking to pierce the veil must also establish that the domination was used to commit a "wrongful or unjust act toward the plaintiff" which caused injury to the plaintiff. *See Adler*, 518 B.R. at 233 (*citing Mars Electronics of N.Y., Inc. v. U.S.A. Direct, Inc.*, 28 F.Supp.2d 91, 97 (E.D.N.Y. 1998); *accord First Keystone Consultants, Inc v. Schlesinger Elec. Contractors, Inc.*, 871 F.Supp.2d 103, 124 (E.D.N.Y. 2012)). A plaintiff cannot succeed on an alter ego claim without establishing "that the owners of the corporation, through their dominance of the corporation, 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [the complainant contracting] party such that a court in equity will intervene.'" *See Sentry Ins. v. Brand Management Inc.*, 120 F. Supp. 3d 277, 286 (E.D.N.Y. 2015) (*quoting JSC Foreign Econ. Ass'n*

*Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 465 (S.D.N.Y. 2005)).

A plaintiff may be considered "injured" by the defendant's actions when "a company is rendered

unable to pay the claims pending against it by third parties because of another company or

individual's domination of the business." *See Balmer v. 1716 Realty LLC*, No. 05 CV 839

(NG)(MDG), 2008 WL 2047888, at *6 (E.D.N.Y. May 9, 2008) (*citing Austin Powder Co. v.*

*McCullough*, 216 A.D. 825, 827 (N.Y. App. Div. 1995)). Actual or common law fraud need not

be proven. *See DER Travel Servs. v. Dream Tours & Adventures*, No. 99 Civ. 2231 (HBP), 2005

WL 2848939, at *9 (S.D.N.Y. Oct. 28, 2005).

### (i)    *First Prong: Complete Domination of the Corporation*

At trial the Debtor admitted that prior to Greenboy ceasing operations there were multiple

occasions where he used Greenboy's debit cards for personal expenses and numerous times

when money was transferred between Greenboy's accounts and the Debtor's personal bank

accounts. Trial Tr. 106. The Debtor explained these as accidental instances because his personal

and corporate debit cards looked the same. *Id*. at 107, 111. He also testified that he only used the

business account because he did not have access to his personal debit card because he was not

taking a paycheck from Greenboy and was "floating by." *Id*. at 109.

Plaintiff's counsel offered into evidence the Small Business Capital One Account bank

statements for the period of July 2015 through September 2016. *See* Pltf. Tr. Ex. 8. These

records show that in July 2015 there were a total of 63 separate deposits into the Small Business

Capital One Account totaling $9,830.41. The number of checks and the varying amounts leads

the Court to conclude that these were collections on Greenboy accounts. In the same period of

time, the Debtor made cash withdrawals and/or outward bank transfers in the amount of

approximately $6,640, and a variety of miscellaneous debit card purchases in the approximate

amount of $3,962, for a total of $10,602.02 in withdrawals from the account in July 2015. The Debtor's own testimony was that Greenboy ceased operations in June 2015 and so the Court must conclude that most if not all of these withdrawals from the Small Business Capital One Account were for personal expenses. Trial Tr. 105.

In August 2015, the Debtor continued to deposit Greenboy receivables into the Small Business Capital One Account (33 deposits totaling $4,204), and continued to use those funds for personal expenses. Trial Tr. 111-112. The Small Business Capital One Account statements during August 2015 and each subsequent month after show that the Debtor regularly made purchases, withdrawals and cash transfers from the Small Business Capital One Account. *See* Pltf. Tr. Ex 8. There are a number of transactions where the debit card linked to the Small Business Capital One Account was used for personal expenses, such as transactions at: "SPLISH SPALSH"; "FUNCHO'S FAJITA GRILL"; "MCDONALDS"; "PLAYLESS SHOESOURCE"; "RITE AID CORP."; "CARVEL"; "DUNKIRK'S DELI"; "FRANCESCAS ITALIAN RES"; "SOUTH FORK DELI"; "BURGER KING"; "SUBWAY"; "PIZZA PLACE"; "HAMPTON BAYS BAGELS"; "NO 1 CHINESE"; "HANNEN MOTORSPORTS INC" and many other food or personal expense related transactions. *See id*. In addition to the dwindling Greenboy collections, the Debtor testified that he was able to fund these transactions by transferring money from his personal account into the business account. Trial Tr. 112. The Debtor further testified that he would have his paycheck from Hampton Bays School District (where he started working in June 2016) deposited into his wife's bank account then transfer money out of her account into the Small Business Capital One Account. Trial Tr. 89 & 117.

Although the Court believes that these facts alone would be sufficient to satisfy the "domination" prong of the alter ego analysis, there are other factors here that weigh in favor of

an alter ego finding, including the Debtor's guaranty of Greenboy's obligations under the

Purchase Agreement, *see In re Adler*, 467 B.R. 279, 293 (Bankr. E.D.N.Y. 2012), and the fact

that Greenboy seemed to be entirely undercapitalized as evidenced by its inability to make even

the down payment under the Purchase Agreement, *see e.g. Anderson v. Abbott*, 321 U.S. 349,

362 (1944) ("An obvious inadequacy of capital, measured by the nature and magnitude of the

corporate undertaking has frequently been an important factor in cases denying stockholders

their defense of limited liability.").

For all these reasons, the Court finds that the Debtor completely dominated and

controlled Greenboy satisfying the first prong of the alter ego analysis. *See Baby Phat Holding,*

*Co.*, 997 N.Y.S.2d at 70. Next the Court must determine if the Debtor's domination over

Greenboy caused an injury to the Plaintiff.

### (ii)        *Second Prong: Injury to Plaintiff Caused by Domination of Corporation*

Greenboy purchased the Plaintiff's business in March 2015 on the promise to pay

$90,000 over time. Based on this promise, Greenboy took possession of all of the Plaintiff's

assets. Greenboy operated the Plaintff's business for only about three months, kept all the assets

and defaulted on its payment obligation. This alone is insufficient to show wrongdoing necessary

to support an alter ego finding. Contract defaults are not uncommon and generally only lead to

contract damages. Here, however, the Court finds that the Debtor used his complete domination

and control of Greenboy to commit a fraud or wrong against the Plaintiff which caused the

Plaintiff harm. First, the Debtor diverted funds from Greenboy's Small Business Capital One

Account to pay personal expenses. Although Greenboy had ceased operating, according to the

Debtor there were some business receipts coming into the Greenboy account. Those funds,

which totaled $14,000 from July and August alone were diverted by the Debtor away from

Greenboy and used to pay personal expenses. Second, the Debtor failed to maintain any distinction between his personal property and Greenboy property. At the point of Greenboy's default, the Debtor chose to use corporate assets to satisfy his personal expenses to the detriment of Greenboy's creditors, including Plaintiff. The Debtor showed utter disregard for the distinction between his own property and Greenboy property and this caused direct and real harm to Plaintiff.

For all these reasons, the Court finds the Plaintiff has established that the Debtor had complete dominance and control over Greenboy which caused economic injury to the Plaintiff. Thus, the Court finds that at all relevant times Greenboy was the alter ego of the Debtor.

### Section 727 and Alter Ego

In the context of § 727 claims, the alter ego finding is significant in that it creates an obligation upon the Debtor to disclose details regarding Greenboy's financial affairs in his individual bankruptcy case. If the Debtor failed to disclose Greenboy's assets in this bankruptcy, then the Debtor improperly "concealed" property of the debtor in violation of § 727(a)(2)(A). If the Debtor failed to keep or preserved books and records for Greenboy then the Debtor contravened § 727(a)(3) by making it impossible to ascertain his own financial condition. If the Debtor failed to explain the loss of Greenboy assets then the Debtor failed to explain the loss of his own assets sufficient to meet his liabilities under § 727(a)(5). Finally, if the Debtor omitted assets of Greenboy from his petition and schedules, then the Debtor gave false oaths regarding "property of the debtor," running afoul of § 727(a)(4)(A).

### Section 727 Denial of Discharge

It is well-settled that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor. *See State Bank of India v. Chalasani (In re Chalasani),*

92 F.3d 1300, 1310 (2d Cir. 1996). The plaintiff bears the burden of establishing each of the elements of § 727 by a preponderance of the evidence. *See Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993) (*citing Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279 (Bankr. S.D.N.Y. 1992); *Hubbell Steel Corp. v. Cook (In re Cook)*, 126 B.R. 261, 266 (Bankr. E.D. Tex. 1991)); *see also* Fed. R. Bankr. P. 4005. If one of the ten objections to discharge enumerated in § 727(a) is proven, none of the Debtor's obligations will be discharged by the bankruptcy filing. *See* 11 U.S.C. § 727(a).

The Court will address each of the four claims asserted.

### Section 727(a)(2)(A): Concealing or Transferring Assets Within One Year Before the Petition Date with Intent to Hinder, Delay, or Defraud

A debtor's discharge may be denied under § 727(a)(2) "if the debtor (1) with intent to hinder, delay, or defraud a creditor, (2) transfers, removes, destroys, mutilates, or conceals, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) property of the debtor (4) within one year of the petition date." *Doubet, LLC v. Palermo (In re Palermo)*, 370 B.R. 599, 612 (Bankr. S.D.N.Y. 2007) (citation omitted). "A key component of [§] 727(a)(2) is that the property at issue was the property of the debtor, so that the transfer diminished the debtor's bankruptcy estate." *Web Holdings, LLC v. Cedillo (In re Cedillo)*, 573 B.R. 451, 464-65 (Bankr. E.D.N.Y. 2017). A debtor "conceals" "property of the debtor" for purposes of § 727(a)(2)(A) by either placing it beyond the reach of their creditors or proffering false or misleading answers regarding such property. *See Marine Midland Bank v. Portnoy (In re Portnoy)*, 201 B.R. 685, 694-95 (Bankr. S.D.N.Y. 1996) (*quoting* 4 COLLIER ON BANKRUPTCY ¶ 727.02[6][b] (15th ed. 1994)). "[T]ransfer" is defined in § 101(54) as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with…property; or . . . an interest in property." 11 U.S.C. § 101(54)(D). The term "transfer"

should be interpreted "as broad as possible" to include any disposition of property. *See In re Cedillo*, 573 B.R. at 468 (*citing Martin v. Bajgar (In re Bajgar)*, 104 F.3d 495, 498 (1st Cir. 1997) (*quoting* S. Rep. No. 989, 95th Cong. 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813)).

The plaintiff must establish actual intent to hinder, delay or defraud. *See Glaser v. Glaser (In re Glaser)*, 49 B.R. 1015, 1019 (Bankr. S.D.N.Y. 1985). A court may find the requisite intent through either: (1) direct or explicit proof, or, (2) a preponderance of circumstantial evidence of a debtor's illicit intent, commonly known as the "badges of fraud." *See Republic Credit Corp. v. Boyer (In re Boyer)*, 328 Fed. Appx. 711, 714-15 (2d Cir. 2009) (*citing Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983)). The court in *In re Kaiser* identified six badges: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." *In re Kaiser*, 722 F.2d at 1582-83. The court also identified two other instances which would implicate fraud: "[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud" and "[t]he shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud." *Id.*

The Court finds that the Debtor's act, by his own admission, of depositing his paycheck from Hampton Bay School District into his wife's (undisclosed) bank account and then

transferring those funds to Greenboy's Small Business Capital One Account (also undisclosed) to pay personal expenses, was a transfer of property of the Debtor within one year before the bankruptcy filing. Trial Tr. 116-117. The Debtor's pre-petition income was property of the Debtor (element #3). The Debtor concealed that income by depositing it into a bank account which was not disclosed in the bankruptcy and then he transferred the income to another undisclosed bank account to pay personal expenses (element #2), (Trial Tr. 117), and he did so within one year of the bankruptcy filing (element #4). The Small Business Capital One Account statements show that the Debtor continued to make transfers into and out of that account up to and including March 31, 2016. The petition was filed on November 17, 2016, and so the one-year requirement is satisfied.[7]

The Court finds the Debtor had the requisite intent to hinder, delay or defraud creditors under § 727(a)(2)(A). While the Plaintiff's State Court action against the Debtor and Greenboy was pending, the Debtor regularly had his income deposited into his wife's bank account, Trial Tr. 116-117, and then transferred that money into the Small Business Capital One Account to pay his personal expenses. The Court finds that these were intentional acts designed to allow the Debtor the use and enjoyment of his property while avoiding his obligations to the Plaintiff. *See* Pltf. Tr. Ex. 8 and Trial Tr. 112-113. *See Adler*, 518 B.R. at 240 (*citing In re Kaiser*, 722 F.2d at 1582-83); *see also Vidro v. Vidro (In re Vidro)*, 497 B.R. 678, 688 (Bankr. E.D.N.Y. 2013) (finding intent to defraud where the defendant transferred funds to his wife's account over which

---

[7] The Court finds the record is insufficient to find that the Debtor improperly transferred property of the Debtor and/or Greenboy via his LetGo or Facebook accounts. Although the Court does not find credible the Debtor's testimony that none of that equipment belonged to him (except for a single mower), the LetGo and Facebook account pages were admitted only for the limited purpose of establishing that those pages existed and the items were offered for sale. They were not admitted for purposes of establishing that those items were in fact owned by the Debtor. As such, the Court cannot use Exhibits 6 and 7 as a basis to conclude that the Debtor transferred those assets in violation of §727(a)(2)(A).

he had control); *Pisculli v. T.S. Haulers, Inc. et al. (In re Pisculli)*, 426 B.R. 52, 67 (E.D.N.Y. 2010) ("Appellant's transfer of the truck proceeds to his wife, who placed those funds in her personal bank account and used at least a portion of those funds for her and appellant's personal use, implicates this indicia of fraud."), *aff'd*, 408 Fed. Appx. 477 (2d Cir. 2011).

For all of these reasons, the Court finds that the Plaintiff has proven by a preponderance of the evidence that the Debtor concealed and/or transferred "property of the debtor," within one year prior to the filing of this bankruptcy case, with the intent to hinder, delay or defraud his creditors, including the Plaintiff. Thus, the Court will deny the Debtor's discharge pursuant 11 U.S.C. § 727(a)(2)(A).

### Section 727(a)(3): Failure to Keep or Preserve Recorded Information

Under §727(a)(3) the discharge will be denied if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Unlike § 727(a)(2)(A), § 727(a)(3) lacks an intent requirement. "The fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *State Bank of India v. Sethi (in re Sethi)*, 250 B.R. 831, 837-38 (Bankr. E.D.N.Y. 2000).

Courts have established a two-step, burden-shifting approach under § 727(a)(3). *See Adler*, 518 B.R. at 241-42 (*citing In re Jacobowitz*, 309 B.R. 429, 436 (S.D.N.Y. 2004)). "First, the Court must determine whether the Debtor's records present a complete and accurate picture

of the Debtor's financial condition and business transactions." *Id.* This burden rests on the

plaintiff. This Court has adopted a non-exhaustive list of factors to be determine the "adequacy"

of records: (1) whether the debtor was engage in business, and if so, the complexity and volume

of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to

keep or preserve books and records was due to the debtor's fault; (4) the debtor's education,

business experience, and sophistication; (5) the customary business practices, for record keeping

in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing

books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the

debtor's courtroom demeanor. *See Sethi*, 250 B.R. at 838; *see also D.A.N. Joint Venture v.*

*Cacioli (In re Cacioli)*, 463 F.3d 229, 236 n. 9 (2d Cir. 2006) (clarifying that the *Sethi* test is to

be used for determining the adequacy of a debtor's records not for judging the credibility of his

or her justification).

　　To satisfy their burden under § 727(a)(3) that a debtor has not supplied accurate records,

a creditor must show by a preponderance of the evidence either (1) the provided records'

inadequacy in accordance with *Sethi*, cited above, or (2) the impossibility of ascertaining "the

debtor's present financial condition and the nature of any business transaction that occurred

within a reasonable period prior to filing." *Schackner v. Breslin Realty Dev. Corp.*, No. 11-CV-

2734 (JS), 2012 WL 32624, at *4-5 (E.D.N.Y. Jan. 5, 2012). Assuming the plaintiff satisfies this

burden, the burden shifts to the debtor to show that the failure to keep adequate records is

justified. *See Adler*, 518 B.R. at 241-42.

　　The complaint alleges that the Debtor failed to keep proper records "because various

assets Defendant admitted that he owns and other assets advertised for sale and sold were not

included in the Bankruptcy Petition." Complaint ¶ 33. The Debtor claims that he has accounted

for all of his and Greenboy's assets and turned over all requested documents. While the Court

has no doubt that the Debtor did not keep adequate records of his and/or Greenboy's financial

affairs, the Plaintiff simply failed to establish a record upon which the Court could make such a

finding. The Court finds that the Plaintiff has failed to satisfy their burden of proving that the

Debtor has failed to provide and maintain adequate books and records.

For the stated reasons above, the Court will deny the Plaintiff's claim for relief pursuant

to § 727(a)(3).

### Section 727(a)(4): Knowing and Fraudulent False Oath or Account

Under § 727(a)(4)(A), a court may not discharge a debtor if he or she "knowingly and

fraudulently, in or in connection with the case, made a false oath or account." *See* 11 U.S.C. §

727(a)(4)(A). For purposes of a § 727(a)(4) objection, a plaintiff must prove five elements by a

preponderance of the evidence: (1) "the debtor made a statement under oath"; (2) "the statement

was false"; (3) "the statement related materially to the bankruptcy case"; (4) "the debtor knew

the statement was false"; and (5) "the debtor made the statement with fraudulent intent." *See*

*Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000)

(citations omitted). Once the objecting party has provided sufficient evidence, the burden shifts

to the debtor to provide evidence to prove that it was not an intentional misrepresentation. *See*

*Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 662-63 (Bankr. S.D.N.Y. 2008) (*citing Baron*

*v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005)).

A debtor's petitions, schedules, and related statements and declarations are made under

penalty of perjury and "constitute a statement under oath for purposes of § 727(a)(4)(A)." *See*

*Pergament v. Gonzalez (In re Gonzalez)*, 553 B.R. 467, 474 (Bankr. E.D.N.Y. 2016) (quoting

*Nof. v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). "'Omissions as well

as affirmative misstatements qualify as false statements for § 727(a)(4)(A) purposes.'" *Adler v. Lisa Ng et al. (In Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008) (quoting *Republic Credit Corp. I v. Boyer (In re Boyer)*, 367 B.R. 34, 35 (Bankr. D. Conn. 2007), *aff'd*, 384 B.R. 44 (D. Conn. 2008)). "A statement is false if (1) it omits even one asset or source of income; (2) necessarily material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatement is made and is not corrected during an examination or at any point during the proceeding." *See Lisa Ng et al. v. Adler (In re Adler)*, 494 B.R. 43, 45 (Bankr. E.D.N.Y. 2013) (citations omitted), *aff'd*, 518 B.R. 228 (E.D.N.Y. 2014). *See Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222, 233 (E.D.N.Y. 2017) (*citing In re Nazzaro*, No. 810-74869-REG, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 13, 2013); *In re Grodin*, 232 B.R. 274, 277 (1st Cir. BAP 1999); *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)) (finding one single false oath or account is sufficient to deny a debtor's discharge).For purposes of determining a debtor's knowledge of the falsehood of a statement "[c]ourts may consider the debtor's education, business experience, and reliance on counsel…but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Bub v Rockstone Capital, LLC*, 516 B.R. 685, 694-95 (E.D.N.Y. 2014). A material matter is "one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property." *See Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228-29 (E.D.N.Y. 2000).

Here, the Debtor's petition and schedules contain multiple material misstatements or omissions. First, on Schedule A/B, the Debtor listed four bank accounts but failed to schedule the Small Business Capital One Account from which the Debtor conducted extensive personal transactions. Second, on Schedule A/B, the Debtor checked "No" in response to "Part 5:

Question 37" which asks whether the Debtor owns or has any legal or equitable interest in any business-related property. Given the Court's alter ego finding, in this section it would have been appropriate for the Debtor to have listed Greenboy's assets, including but not limited to the assets purchased from the Plaintiff. Finally, in response to Question 16 of the bankruptcy petition the Debtor checked the box that his debts are primarily consumer in nature. The Debtor testified that he took the credit counseling course, understood the difference between consumer and business debts. Trial Tr. 83-84. Yet he elected to characterize his debts as consumer despite the fact that the majority of his debt was related to Greenboy. These omissions and misstatements are materially false oaths that relate directly to the Debtor's finances and the disposition of his property. *See In re Agai et al. v. Angtoniou (In re Antoniou)*, 515 B.R. 9, 23 (Bankr. E.D.N.Y. 2014). The Court, therefore, finds that the Plaintiff has satisfied its burden under § 727(a)(4)(A) to establish a false oath or account.

An objecting party may prove that a false oath was made with the fraudulent intent required by § 727(a)(4) by either (1) showing evidence of a debtor's actual intent to deceive or (2) indicia of his reckless indifference to the truth. *See In re Adler*, 395 B.R. at 843 (citations omitted). A plaintiff can prove actual intent using the "badges of fraud" discussed above. *See Martin v. Key Bank of New York (In re Martin)*, 208 B.R. 799, 806 (N.D.N.Y. 1998). The debtor bears a burden of showing that the false oath or misstatement was not intentional. *See Pereira v. Gardner (In re Gardner)*, 384 B.R. at 662-63 (*citing Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005)).

The Debtor offered no explanation for his failure to list the Small Business Capital One Account and other Greenboy assets other than that he relied on the corporate separateness of Greenboy. The Court finds this reliance was not justified. The alter ego doctrine exists in order to

avoid the harm that might result when the corporate form is abused. The Debtor abused the corporate form and the consequence that flows from the Court's alter ego finding is that all assets and liabilities of Greenboy were at all relevant times the assets and liabilities subject to disclosure in this bankruptcy proceeding. The Debtor, by his actions, forfeited the right to rely on the corporate separateness of Greenboy. The Court finds that the Debtor's actions here were calculated to keep assets from the reach of his creditors and his disclosure failures in this case exhibited a reckless disregard for the truth.

This Court finds that the Debtor knowingly and fraudulently made false oaths on his petition and schedules. Thus, the Court will deny the Debtor's discharge pursuant to § 727(a)(4)(A).

### Section 727(a)(5): Failure to Explain Loss of Substantial Assets

Under § 727(a)(5) the Court may deny a debtor a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." *See* 11 U.S.C. § 727(a)(5). The underlying purpose of § 727(a)(5) is to deter and punish debtors from "'abus[ing] the bankruptcy process by obfuscating the true nature of [their] affairs, and then refusing to provide a credible explanation.'" *In re Gannon*, 173 B.R. at 317 (citations omitted).

The plaintiff carries the initial burden and must establish three elements: (1) that a debtor at one time possessed or claimed to control substantial and identifiable assets; (2) that those assets have disappeared, their disposition or placement now unknown; and (3) that no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by the debtor. *See, e.g.*, *Adams v. Inzero (In re Inzero)*, 426 B.R. 428, 432 (Bankr. D. Conn. 2009) (*citing In re Cacioli*, 463 F.3d at 238). In the instant case, the Debtor testified that he used the

Small Business Capital One Account debit cards for personal expenses, (Trial Tr. 112), however, upon reviewing the bank statements submitted at trial there are other withdrawals that the Debtor did not explain. *See* Pltf. Tr. Ex. 8. For the Period of July 1, 2015 to July 31, 2015 the Small Business Capital One Account statements show multiple ATM or other withdrawals for amounts that range from $100.00 to $2,100.00. *See* Pltf. Tr. Ex. 8. In October 2015, three months after Greenboy shutdown, the Debtor continued to make withdrawals from the Small Business Capital One Account. *See id*. This Court finds that these records show that Greenboy and the Debtor had assets that were dissipated, thus the Plaintiff has met its burden under § 727(a)(5). *See Buckeye Ret. Props. of Ind., LLC v. Tauber (In re Tauber)*, 349 B.R. 540, 564-65 (Bankr. N.D. Ind. 2006).

After the objecting party has met their burden, the debtor must supply a "satisfactory" explanation for the failure to account for the missing assets. *See Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681, 689 (Bankr. E.D. Pa. 2001). The standard for "satisfactory" is a question of fact and is analyzed on the basis of reasonableness and credibility. *See Adler*, 494 B.R. at 73 (*citing Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 663 (Bankr. E.D.N.Y. 1993)). The bankruptcy judge must be convinced that the debtor has not hidden or improperly shielded assets. *See id*. (*citing First Am. Bank v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 29-30 (Bankr. E.D.N.Y. 1994)). In the present case, the Debtor did not convince this Court that assets were not hidden or improperly shielded. It was clear from the bank statements and the Debtor's testimony that he often transferred money freely between the personal and corporate accounts, used corporate debit cards to pay for food and other personal expenses. This Court finds the Debtor's explanations in this regard incredible. He testified variously that he used his Small Business Capital One debit card because his personal and business debit cards looked the same, (Trial Tr. 107), because he "left [his] personal one at home", (Trial Tr. 112), because his

personal credit card was maxed, (Trial Tr. 115), and because he "was very overwhelmed and it was convenient," (Trial Tr. 115). He admitted that he transferred his personal funds into the Small Business Capital One account to fund these expenses and withdrawals, and the transfers came from his wife's account even though his wife does not earn an income. Trial Tr. 116. He testified that the funds in his wife's account came from his paycheck which he had deposited into her account. *Id.* Putting aside the inconsistencies, the Court finds none of these to be a satisfactory explanation for the Debtor's actions. The Court finds that it was the Debtor's intention to put his assets beyond the reach of his creditors and for these reasons the Court will deny the Debtor's discharge pursuant to § 727(a)(5).

## CONCLUSION

For all of the reasons stated herein, this Court finds that the Debtor is the alter ego of Greenboy and therefore all assets and liabilities of Greenboy were, at all relevant times, assets and liabilities of the Debtor subject to disclosure in this bankruptcy proceeding. Given this finding and all of the other findings made in this Decision, the Plaintiff's claims for relief pursuant to §§ 727(a)(2)(A), (a)(4)(A) and (a)(5) will be granted. The Plaintiff's claim pursuant to § 727(a)(3) will be denied. A judgment consistent with this Decision shall be entered forthwith.



**Dated: Central Islip, New York**
**June 24, 2019**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**